## Wright v. Wagner

*James Francis Lawler*, for plaintiffs.

*James L. Stern, Joseph V. Furlong, Jr.,* and *David Berger*, for defendants.

BLANC, J., July 31, 1961.—This complaint in equity was filed by plaintiffs, each of whom is a resident and taxpayer of the City of Philadelphia, against the city, its Streets Commissioner, David M. Smallwood, and its Managing Director, Donald C. Wagner. Plaintiffs sought to enjoin the execution of an alleged invalid contract between the city and the Landfill Corporation of Pennsylvania, Inc. This contract, dated December 30, 1960, in essence provided that the city should pay Landfill $125,000 during 1961 for the privilege of disposing of 500,000 cubic yards of trash and rubbish on the site of Landfill in Norwood, Pa. Plaintiffs asserted that the contract for refuse disposal was illegal and invalid for the following reasons: (1) It was

awarded without competitive bidding, which they allege is the requirement of section 8-200 of the Philadelphia Home Rule Charter of April 17, 1951; (2) it was awarded without approval of the city council, which they allege is the requirement of section 5-500(c) of the charter; and (3) in the alternative, if the charter did not require competitive bidding and approval by city council, Smallwood abused his discretion in awarding the contract to Landfill without negotiating with Clearview Land Development Company, because of his bias and prejudice against Clearview and his preference for Landfill. After hearing, the chancellor filed an adjudication sustaining all of plaintiffs' contentions. Defendants filed exceptions to the chancellor's findings of fact, conclusions of law and decree nisi which were argued before this court en banc and which are now before us.

These exceptions fall within the following four categories:

1. The chancellor made findings of fact which were not supported by the evidence.

2. The chancellor refused to make findings of fact as requested by defendants.

3. The chancellor refused to adopt the conclusions of law requested by defendants.

4. Exceptions to the decree nisi.

The bone and sinew of the city's attack on the chancellor's adjudication is to be found in the third category of exceptions. It challenges the chancellor's view that the negotiated contract was invalid because it was executed in violation of sections 200 and 5-500 of the charter. In essence, the city contends that Landfill rendered no services to the city under this contract; therefore, it claims that these sections of the charter are inapplicable.

Without alluding to the reasons cited by the chancellor, we share his viewpoint that the contract be-

tween the city and Landfill was one for services. By the very terms of the agreement, Landfill was bound to render services to the city. Likewise, we emphasize the view of the chancellor that the instant litigation concerns one of the most vital and important sections of the charter. We refer, of course, to section 8-200 which calls for competitive bidding and the selection of the lowest responsible bidder in the letting of certain city contracts. As the chancellor so ably pointed out, this section is not new, nor is it a novel enactment of public policy. It contained the mandate of the Acts of May 23, 1874, P. L. 230, sec. 6, 53 PS §1001, and of June 25, 1919, P. L. 581, art. XX, sec. 5, 53 PS §12675 (the City Charter of 1919), that competition must be the pole star in the city's firmament in order to guard against favoritism, extravagance, fraud and corruption in the awarding of municipal contracts. We agree with the chancellor that our judicial efforts should be directed to construe the pertinent legislation so that, as an end result, negotiated contracts will henceforth bear the city's disapproval, and not its encouragement. We need not refer to numerous authorities cited by the chancellor in his adjudication to buttress our viewpoint that the public interest should prevail in cases where there is a conflict between the convenience of the city's contractual practices as opposed to the public interest. We deem it sufficient to cite the most recent decision of our Supreme Court in Patterson v. Delaware County, 404 Pa. 5 (1961), where the mandate of competitive bidding was enforced even in the bizarre situation where the contractor was innocently beguiled into a loss contract, it being undisputed that the township and the contractor acted in good faith. In this case, the Supreme Court reaffirmed the mandate for competitive bidding in this terse language, at page 7:

"It [The Township Act] was passed to prevent fraud. Sometimes, as in this case, it works a gross injustice, but it cannot be evaded, ignored, nullified or rewritten by a Court."

As we stated during the argument of this case, the city is, policywise, on the wrong side of the fence. It is here attempting to justify a privately negotiated contract, being well aware that should its efforts succeed, the result would be the creation of a rent in the civic and fiscal fabric of the charter which, once opened, could be widened by subsequent administrative edict or councilmanic enactment. If its viewpoint is to receive judicial sanction, henceforth all work done for the city, and specifically defined or interpreted by the city's executive or legislative officers not to be "for construction, alterations, repairs or maintenance or for rendering any services to the city" could be awarded through the medium of a privately negotiated contract. To pose the question is to supply its answer. We shall and will not, by sustaining the city's viewpoint, open the door that inevitably leads to the evils which this section of the charter was specifically enacted to prevent and prohibit.

In its able brief, the city does not challenge the chancellor's opinion that section 8-200 of the charter, section 6 of the Act of May 23, 1874, article XX, sec. 5, of the Act of June 25, 1919, section A-110 (appendix) of the charter and section 11-101 of article XI of the charter must be considered and construed together in order to ascertain that which he has considered to be the true intent of the framers of the charter; i.e., the mandate for competitive bidding and the award to the lowest responsible bidder cannot be evaded or avoided by administrative fiat. The city, on this vital issue, contends (see page 14 of its brief) that competitive bidding "is not possible" in the acquisition of landfill sites, and it attempts to support its position

by showing the problems the city would encounter were it forced to utilize the competitive process in letting such contracts.

There are two good and sufficient answers to this contention. First, the mandate of the charter cannot be avoided because of administrative expediency. If negotiated contracts are substituted for an award to the lowest responsible bidder, there could never be any determination that the work is being done or the services rendered at the lowest cost to the city. Second, should experience show that the city's health and welfare program or its relationship to adjoining communities are being prejudiced or adversely affected by the failure to use the negotiated process for landfill operations, the charter could be amended to allow such practice by resorting to the simple and expeditious amendatory method provided for in the Home Rule Act of 1949.

We also disagree with defendants' contention that article XX, sec. 5, of the Act of June 25, 1919, does not contain any mandatory requirement as to competitive bidding. We conclude that the word "may" as used therein refers to those who may invite the bids for such works; i.e., either the mayor or the city council. We are of the opinion that this provision for competitive bidding to award a contract for the disposal of rubbish is mandatory whether the contract is awarded by the mayor or the city council.

With respect to defendants' contention that the instant contract was not required by the charter to be specifically approved by city council, our judgment inclines us to follow the chancellor's holding that this contract was one which specifically required such express approval. Nor do we think that the approval by city council for the transfer of funds in the budget for this contract was sufficient to comply with section 5-500(c) of the charter. . . .

88

*Order*

And now, to wit, July 31, 1961, after consideration of the briefs and arguments of counsel thereon, defendants' exceptions to the chancellor's findings of fact are partially sustained, as incorporated herein, as amended findings of fact and additional findings of fact, respectively. All other exceptions to the findings of fact, conclusions of law, and decree nisi are dismissed. It is ordered, adjudged and decreed that the decree nisi be entered as the final decree of the court.